MILLER, Judge ad hoc
(dissenting).
Being of the opinion that the plaintiff was an employee of the defendant, I am duty bound to respectfully dissent.
Although the record is not absolutely clear as to who paid the plaintiff for his work at St. Landry, I am of the opinion that Mr. Malone and Mr. Hennessy, with plaintiff’s permission, agreed that all of the money which plaintiff earned by hauling for Malone was to be paid to Hennessy. Hennessy would then withhold rent on the trucks. He would further withhold additional sums to repay the defendant for a part of the indebtedness which plaintiff owed. Part of this indebtedness arose from plaintiff’s failure to make ends meet while plaintiff was working for defendant on the Basile operation. Another part of the indebtedness arose from advances which defendant made so that plaintiff could go to St. Landry to work on the Fontenot tract. As I understand it there was no way that the plaintiff or defendant could state with certainty what sum of money the defendant would see fit to turn ''over to plaintiff each pay day. Mr. Hennessy testified concerning the Fontenot operation that
“as he '(Jones) would get his check 'for ties that were produced, any amount.that we could hold out and still leave him enough to live on, we did.”
It is therefore my appreciation of the facts,, that Malone was bound to pay all of plaintiff’s earnings to the defendant, and that defendant had it within its exclusive control to determine how much of the $656.22 that plaintiff owed to defendant should be withheld from, each pay check. .
As I see it, it is not so important to note that October 2, 1951 was the last date Malone delivered ties to the defendant. What is important is that through the date-plaintiff was injured, Malone was to pay all of plaintiff’s earnings to the defendant, who-would in turn pay plaintiff enough to live on.
■ It is also important to note that on October 19, 1951 defendant gave Samuel Whatley a check for $89.04 representing the grocery bill which the defendant had guaranteed Mr. Whatley on behalf of the plaintiff. Mr. Hennessy testified that he-gave the check to Mr. Whatley “paying Aurelia’s grocery bill after Aurelia got hurt.”
I agree with the majority opinion that the Law Review article by Mr. Malone correctly sets forth the jurisprudence. However, in none of the cited cases do I find the cumulation of relationships that existed between this plaintiff and defendant. Here we find that the buyer sought out work for the plaintiff. Mr. Hennessy testified that!
“After Aurelia Jones came to Louisiana to produce ties, he got so far in debt to O. C. Hennessy, Inc. that it was to my advantage to try and give him work where he could make enough money to live and to repay his indebtedness to O. C. Hennessy, Inc.”
*702 At another point he testified that:
“I was interested in seeing Aurelia get started with Mr. Malone so that he might work and repay the debt he owed us.”
Further, the buyer paid the plaintiff for his services. I agree that plaintiff was paid but 40ff a stick for lumber hauled to Malone’s mill, and that Malone is the one who set the price. However, Malone was to pay this price to the defendant and the defendant in turn by giving a check on the defendant’s own company paid the plaintiff. Here the buyer was the one who finally determined what amount should be paid to the plaintiff, for as Mr. Hennessy testified, he simply tried to leave plaintiff enough to live on. Here the buyer made arrangements for the plaintiff’s housing, and actually used his own automobile to move plaintiff’s family to St. Landry. Here the buyer “guaranteed” the plaintiff’s grocery bill so that plaintiff could work at St. Landry.
I believe that the sum total of all of the arrangements can lead to no other conclusion but that the defendant had the right to control plaintiff’s work and plaintiff was an employee of Mr. Hennessy’s company. I feel that the arrangements in this case show that the defendant attempted to pattern its operations on that line of cases cited in Professor Malone’s Law Review article, but that this defendant falls short of meeting the test. In this instance the defendant company simply did not hew to the line.
I feel that the Lower Court erred in holding U. S. F. & G. liable under its insurance contract. As I understand the insurance contract it is limited to cases arising under the Texas law. This case was brought under the Louisiana law and, therefore, U. S. F. & G. should be discharged from liability.
For the above reasons I am of the opinion that the plaintiff should be awarded the judgment as prayed for against the defendant, O. C. Hennessy, Inc., and I therefore respectfully dissent.